# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **JOHN H. MAZE,** | ) | |
| | ) | |
| **Petitioner,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **No. 13-3049-KHV** |
| | ) | |
| **SIOBAN LEDWITH, Colonel/Commandant,** | ) | |
| **USDB-Leavenworth,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM AND ORDER

An inmate at the United States Disciplinary Barracks in Fort Leavenworth, Kansas ("USDB") filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondent filed an Answer And Return ("A&R") (Doc. #10) and petitioner filed a Traverse (Doc. #19)  Respondent filed a Response To The Traverse (Doc. #20) and petitioner filed a Reply To Response To The Traverse (Doc. #21).  Having considered all pleadings and exhibits, together with the relevant legal authorities, the Court finds that the petition can be resolved upon the record and is ready for decision.

## Procedural History and Factual Background

Mr. Maze is a former active duty member of the United States Navy.  In August of 2008, in Japan, a military judge sitting as a general court-martial found him guilty in accordance with his guilty pleas of "sodomy on divers occasions with a child under the age of 12" and "one attempted act of sodomy with a child under 12."  See United States v. Maze, 68 M.J. 337, 2009 CAAF Lexis 1549 (Nov. 19, 2009); A&R (Doc. #10-1) at 28.[1]  On September 19, 2008, the judge sentenced him

---

[1]    The offenses arose from his having "persuaded" his seven-year old daughter "[o]n several occasions over the course of two months"  to commit fellatio upon him."  Id.

to confinement for 25 years and six months; "to be reduced to the pay grade of E-1, and to be discharged from the Naval service with a dishonorable discharge." Id. at 3. Pursuant to the pretrial agreement, all confinement in excess of 12 years was suspended.

Mr. Maze submitted a Petition for Clemency that contained "post-trial submissions" to the Convening Authority ("CA"). He asked the CA to disapprove two years of his sentence to confinement so that his sentence could be served at the Naval Consolidated Brig Miramar ("Miramar") where he could obtain the most effective sex offender treatment. Petition (Doc. #1-1) at 9-10. He was transferred from Japan and detained at Miramar, but scheduled for transfer to the USDB in January of 2009.

The Amended General Court-Martial Order No. 1-08 dated January 12, 2009 set forth the action of the CA as follows:

> the sentence as adjudged is approved and, except for that part of the sentence extending to a dishonorable discharge, will be executed. Execution of that part of the sentence extending to confinement in excess of 12 years will be suspended for the period of confinement served plus 12 months thereafter, at which time . . . the suspended portion will be remitted without further action. . . . The Naval Consolidated Brig Miramar, San Diego, California, is designated as the place of confinement.

A&R (Doc. #10-1) at 3. In this Order, the CA considered and denied Mr. Maze's clemency request for disapproval of two years of confinement. Id.

The case was referred for appellate review under Article 66, UCMJ. The U.S. Navy-Marine Corps Court of Criminal Appeals (NMCCA) affirmed on appeal. See United States v. Maze, NMCCA 200900027 (NMCCA May 28, 2009) (unpublished); 2009 CCA LEXIS 701 (NMCCA May 28, 2009). The NMCCA considered and rejected the three errors which Mr. Maze asserted. He then filed a petition for grant of review in the U.S. Court of Appeals for the Armed Forces, which

denied the petition without discussion in November of 2009. In January of 2010 General Court-Martial Supplemental Order No. VO9-0380 was issued. It was held that Mr. Maze's approved sentence to confinement and dishonorable discharge "having been finally affirmed in NMCCA No. 200900027" and "Article 71(c), UCMJ, having been complied with, the dishonorable discharge will be executed." See Petition (Doc. #1-1) at 20; A&R (Doc. #10-1) at 22.

In 2012 Mr. Maze filed a pro se Petition for Extraordinary Relief in the Nature of a Writ of Habeas Corpus in the NMCCA. He claimed that the CA had designated Miramar as the place of confinement and that he was therefore improperly transferred from Miramar to the USDB. He also "assert(ed) that the Convening Authority's action either suspended or remitted the adjudged punitive discharge" and "that it was executed in error." Petition (Doc. #1-1) at 21. The NMCCA denied the Petition on June 25, 2012.

### Claims

Petitioner presents two main grounds in his habeas corpus petition. As Ground One, he claims that the CA granted him clemency "to limit the length of confinement and timely treatment," but he has been denied this clemency at the USDB. As Ground Two, he claims "unlawful increase in punishment of the discharge." Petition (Doc. #1) at 5. Under supporting facts in his form petition, Mr. Maze writes "see attached" under Ground One and nothing at all under Ground Two. Attached is a two-page "Petition for Writ of Habeas Corpus." Id. at 7-8. The attached petition is not upon forms however, and does not direct the court to supporting facts for either ground. Instead, petitioner presents claims labeled (1) "Place of Confinement" and (2) "Illegally increase and execution of Discharge" along with various allegations and arguments. The Court has fully considered the pro se form petition together with its attachment, and liberally construes petitioner's

claims as: (1) his transfer from Miramar to the USDB was illegal in that it had "capriciously overridden" the CA's grant of clemency in his case and was without due process; and (2) the Supplemental Court-Martial Order providing that his "dishonorable discharge be executed" illegally increased the punitive discharge portion of his sentence, which had been ameliorated and remitted by the CA.

### Legal Standards

Rule 2(c) of the Rules Governing § 2254 Cases, 28 U.S.C. § 2254 ("HC Rules") provides that the petition must: (1) specify all the grounds for relief available to the petitioner and (2) state the facts supporting each ground. HC Rule 4 requires the assigned judge to review a habeas petition upon filing and to sua sponte dismiss the petition without ordering a responsive pleading under certain circumstances: "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." Id.

A federal civilian court has habeas corpus jurisdiction to review challenges to military court-martial proceedings pursuant to 28 U.S.C. § 2241. However, the Court does not function simply as another appellate court to review military court decisions on the merits of all types of errors raised by a military prisoner. Instead, civilian district court review is unique and quite limited. This Court's review is limited because "the military has its own independent criminal justice system governed by the Uniform Code of Military Justice." Lips v. Commandant, U.S. Disciplinary Barracks, 997 F.2d 808, 810 (10th Cir.), cert. denied, 510 U.S. 1091 (1993). The Code is "all inclusive and provides, inter alia, for courts-martial, appellate review, and limited certiorari review

by the United States Supreme Court."[2]  Id.  In 1953, a plurality of the United States Supreme Court held that the district court may not review challenges to military courts-martial de novo unless the military courts have "manifestly refused to consider those claims."  Burns v. Wilson, 346 U.S. 137, 142 (1953).  Thirty years later the Tenth Circuit Court of Appeals cited Burns in holding that "we will entertain military prisoner's claims if they were raised in the military court and those courts refused to consider them."  Watson v. McCotter, 782 F.2d 143, 145 (10th Cir.), cert. denied, 476 U.S. 1184 (1986).  Consequently, a federal court's habeas corpus review of military court-martial proceedings is limited to determining whether the claims raised by the petitioner were exhausted in the military courts and, if so, whether they were given full and fair consideration by those courts.  Lips, 997 F.2d at 810; Burns, 346 U.S. at 144.  If a petitioner's claims were not raised in the military courts, he has not exhausted his military court remedies and the petition must be dismissed without prejudice.  Banks v. United States, 431 F. App'x 755, 757 (10th Cir. 2011) (citing Schlesinger v. Councilman, 420 U.S. 738, 758 (1975)).  If the issues were raised in the military courts and given "full and fair consideration," the district court should also deny the petition.  Lips, 997 F.2d at 810.  If an issue was "briefed and argued" before a military court and disposed of "even summarily," the federal habeas court will find that the claim was given full and fair consideration.  Watson, 782 F.2d at 145; Lips, 997 F.2d at 812 n.2.  The fact that the military court did not specifically address the issue in a written opinion is not controlling.  Id.  The burden is on the petitioner to show that the military review was "legally inadequate" to resolve his claims.  Watson, 782 F.2d at 144 (citing Burns, 346 U.S. at 146).

---

[2]        The NMCCA is the first appeal level following a court-martial conviction.  See Art. 66(c), UCMJ; 10 U.S.C. § 866(c).  Discretionary review may then be sought in the Court of Appeals for the Armed forces (CAAF).  Art. 67(b), UCMJ; 10 U.S.C. § 867(b).  The third level of appellate review is the United States Supreme Court.  Art. 67(a), UCMJ; 10 U.S.C. § 867(a).

**Analysis**

**I.      Challenge to Dishonorable Discharge**

The Court first discusses petitioner's claim that the CA ameliorated his dishonorable discharge to a bad conduct discharge and it was improperly executed as a dishonorable in the Supplemental Court-Martial Order.  In support of this ground, he alleges that in the General Court-Martial Order of December 30, 2008 his discharge "was abated to a Bad Conduct Discharge and remitted" by the CA.  He thus claims that the execution of his discharge as dishonorable illegally increased his sentence and was contrary to the CA's amelioration of that portion of his sentence.  This argument is mainly a challenge to petitioner's military sentence as entered on the record rather than its execution by prison officials.  Petitioner presented challenges to his sentence on direct appeal to the NMCCA.[3]  However, he does not allege and the record does not show that he challenged his punitive discharge during that appeal.  As noted, before seeking collateral review of a military conviction or sentence in the civilian court system, a military prisoner must have exhausted all remedies available in the military courts.  Banks, 431 F. App'x at 757.  If a petitioner failed to present a claim to the military courts, it is waived.  See Roberts v. Callahan, 321 F.3d 994, 005 (10th Cir. 2003).  Given that Mr. Maze failed to challenge his sentence on this ground on direct appeal, this claim is subject to dismissal as waived.

On the other hand, Mr. Maze does allege and the record shows that he raised this claim in

---

[3]      The written opinion of the NMCCA reflects that the military court considered the parties' briefs and the record of trial, and rejected each of Mr. Maze's assignments of error including the claim that his sentence was inappropriately severe.  A&R (Doc. #10-1) at 25-26; Maze, NMCAA 200900027, at 2-3.  The NMCCA noted that Mr. Maze "was aware that the maximum punishment he faced was life without the possibility of parole."  Id. at 3.  The NMCCA concluded that the sentence "announced by the military judge and approved by the CA is appropriate for this offender and his offenses."  Id.

a Petition for Extraordinary Relief filed in the NMCCA in 2012.  The written opinion of the NMCCA denying that petition plainly reflects that the court considered petitioner's allegations that the CA's action "either suspended or remitted the adjudged punitive discharge" and that his dishonorable discharge "was executed in error."  <u>Petition</u> (Doc. #1-1) at 21.  Thus, petitioner cannot show that the NMCCA refused to consider this claim.  Nor does he demonstrate either that the military court's review was other than full and fair or that its decision was based on improper legal standards.[4]  The NMCCA held: "The Convening Authority's Action approved the punitive discharge and correctly noted that it could not be executed at that time, but rather had to await completion of appellate review."  <u>Id</u>. (citing <u>see</u> Article 71, UCMJ).  Accordingly, this claim is dismissed because it was fully and fairly considered by the military courts.  <u>Lips</u>, 997 F.2d at 810.

Even if the Court had authority to consider this claim, it would deny it on the merits.  The court-martial record plainly establishes that Mr. Maze was sentenced to a dishonorable discharge and that the CA approved this portion of the sentence.  The Memorandum of Pretrial Agreement contains no language in either Part I (Pretrial Agreement) or Part II (Sentence Limitations) suggesting that the adjudged dishonorable discharge was to be ameliorated to a bad conduct discharge as part of the agreement on sentence limitations.  <u>See</u> <u>Petition</u> (Doc. #1-1) at 5-7.[5] Petitioner signed the agreement in which he stated that there were no other agreements.  The sentencing transcript shows that the judge sentenced Mr. Maze "[t]o be reduced to pay grade E-1; [t]o be discharged from the naval service with a dishonorable discharge; and [t]o be confined for a

---

[4]      Petitioner did not even claim in his petition that the military court's review was not full and fair.  His attempts in his <u>Traverse</u> (Doc. #19) and subsequent pleadings to meet this standard are formulaic statements rather than allegations of supporting facts.

[5]      The Government did agree to dismissal of six counts to which Mr. Maze had pled not guilty and to basically suspend all confinement in excess of 12 years, which was significant.

period of 25 years and 6 months." <u>A&R</u> (Doc. #10-1) at 11.  The court-martial judge reviewed Part II of the agreement on the record and stated: "It appears to the court that the sentence adjudged may be approved and ordered executed, with the exception of confinement," which was suspended in excess of 12 years according to the agreement.  Upon questioning, defense counsel and Mr. Maze stated that this was their understanding as well.  <u>Id.</u>  Thus Mr. Maze had no reasonable expectation that his dishonorable discharge would be ameliorated or remitted.  On December 29, 2008, counsel for petitioner filed a Petition for Clemency, which set forth his "post-trial submissions."  In this petition, defense counsel set out the sentence as including "discharge from the Navy with a dishonorable discharge."  Petitioner did not request amelioration of his discharge in this motion.  Petitioner's notion that his punitive discharge was ameliorated by the CA is based upon General Court-Martial Order No. 1-08 that issued on December 30, 2008, and its reference to a bad conduct discharge.  The "sentence adjudged" set forth therein was the same as entered on the record at sentencing.  (Doc. #1-1) at 12.  However, the "Action of the Convening Authority" provided:

> [T]he sentence as adjudged is approved and, except for that part of the sentence extending to a bad conduct discharge, will be executed. . . .

<u>Id.</u>  Respondent contends in his <u>Response To The Traverse</u> (Doc. #20) that this reference to a bad conduct rather than a dishonorable discharge in this Order was merely an error.  This explanation is confirmed by the fact that the CA issued an Amended Court-Martial Order days later, which provided that Mr. Maze's sentence as adjudged included a dishonorable discharge and that the CA approved that portion of the sentence.  The only condition to the approval in both orders was that the dishonorable discharge was not executed at that time.  Petitioner's theory that the CA intentionally changed the language in the first Court-Martial Order to ameliorate his punitive discharge is not supported by plausible facts and is refuted by the record.

Based on language in both court-martial orders, petitioner also claims that the CA ordered that his punitive discharge be "remitted," which he claims means it can never be executed. The overall language describing the CA's action is not a model of clarity. Nonetheless, it is plain that the only portion of the sentence that is to be remitted is the sentence to confinement in excess of 12 years. As petitioner was informed by the NMCCA, his punitive discharge was "suspended" by the CA because a dishonorable discharge cannot be executed until appellate review has been completed. His dishonorable discharge was properly executed upon completion of his direct appeal.

Mr. Maze filed a 47-page Traverse with 108 pages of attached exhibits (Doc. #19) and a Reply To Response To The Traverse (Doc. #21). In these documents, he continues to argue and shape the two grounds in his petition. He also improperly discusses and argues claims that were not presented in his petition.[6] He seeks additional relief including that his confinement be "credited as honorable service towards retirement" and for a writ of mandamus. As noted, all habeas corpus claims and facts in support must be presented in the petition. See HC Rule 2(c). Furthermore, while petitioner baldly states more than once in his extra filings that he exhausted all remedies, he does not allege facts or provide exhibits to demonstrate that he raised any of his additional claims in the military courts. Accordingly, these claims are waived.

## II.    Challenge to Transfer

In support of petitioner's claim that his transfer was illegal, he alleges that the CA exercised his power to "ameliorate" petitioner's sentence and granted the clemency requested by designating

---

[6]    For example, he claims that the Amended Court-Martial Order was not affirmed, the original Order was binding as a result, his discharge was remitted to support the 12 months of probationary enlistment after confinement, he lost abatement days because the "continuous work abatement was reset," he has been denied contact with his children because his ex-wife states that treatment must be completed first, and he and his family are prevented from receiving all veterans benefits to which they are entitled. He also claims cruel and unusual punishment.

Miramar as the place of confinement "as part of the sentence" in the Court-Martial Order. He contends that Miramar is the "only appropriate facility in accordance with the CA's action" and his transfer out of Miramar violated the CA's clemency power. In his attached petition, Mr. Maze claims that his transfer to the USDB was illegal on other grounds as well. First, he asserts that his confinement was increased because he lost access to "more general abatement programs" available at Miramar. In addition, he claims that he is being denied "crime specific treatment," which resulted in lost "opportunity for parole." As support, he alleges that due to delays at the USDB in treatment required by the parole board as a prerequisite to release, he has been unable to formulate a successful parole plan. He also asserts that his transfer to the USDB was without due process. In support of this assertion, he alleges that his transfer was premature and that his counsel and the CA were not provided sufficient notice to "consider a different form of clemency" that would have effectuated the CA's intent for him to receive the child sex offender treatment and benefits available at Miramar.

To the extent petitioner claims that the CA's intent was to grant him clemency in the form of placement at Miramar for his entire sentence, this claim is denied for the same reasons as his dishonorable discharge claim. This claim was not presented on direct appeal. It was, however, presented and considered in petitioner's 2012 extraordinary petition to the NMCCA. Mr. Maze did not attempt to show in his petition that the NMCCA failed to fully and fairly consider this claim, and his attempts in subsequent filings again fail to meet the requisite standard. The NMCCA's order plainly reflects that it considered this claim and reasonably ruled as follows:

> The convening Authority was not required by the terms of the pretrial agreement to designate the Miramar Brig as the place of confinement. Although he had the authority and responsibility to designate the initial place of confinement, service regulations authorize changing the place of confinement.

A&R (Doc. #10-1) at 30; Petition (Doc. #1-1) at 21.

If this Court had authority to consider this claim, it would reject petitioner's underlying premise that his transfer from Miramar was contrary to the CA's actions. The pretrial agreement did not provide that the CA would designate Miramar as part of petitioner's sentence or as the place of his confinement for his entire sentence. In the Petition for Clemency, Mr. Maze's counsel acknowledged that the length of a military prisoner's sentence determines the place of confinement and that under current regulations, those with sentences in excess of ten years are sent to the USDB.[7] Nevertheless, he pleaded for designation to Miramar as a matter of clemency with its "program run by psychologists and professionals" that "is geared toward child sex offenders" rather than the USDB with its "generic sex offender program." Petition (Doc. #1-1) at 10. He argued that the Navy recognized the importance of treating sex offenders and the focus in his case should be on preventing future victims.[8] He further argued that disapproval of two years of his sentence would "bring him under the ten year cutoff for Type II brig facilities" and was "the only way to guarantee" that he would end up at Miramar and receive the treatment that he needs. The CA plainly stated in the first court-martial order that petitioner's request for clemency in the form of disapproval of two years of confinement was considered and denied. Id. at 3. The court-martial orders do not contain

_____

[7]      Respondent exhibits a Navy military manual that describes a Navy Level II Facility as authorized for pre-trial confinement and post-trial confinement of convicted members serving sentences not to exceed five years, and a Navy Level III Facility as authorized for confinement of convicted members serving adjudged sentences of greater than five years." See A&R (Doc. #10-1), Naval Military Personnel Manual (MILPERSMAN) at 59-60. The manual designates Miramar, CA as a Level II facility and the USDB as a Level III facility. Id. at 61.

[8]      In support, he recounted evidence presented at sentencing that he had been analyzed by a forensic psychologist who specialized in sex crimes and her testimony that the best way to prevent a future victim was for Mr. Maze to receive sex offender treatment. She had also analyzed the sex offender treatment programs at both Miramar and the USDB. She testified that Miramar was the only brig in the military where the treatment Mr. Maze needed was available and that the "more generic" program at USDB would not meet Mr. Maze's treatment needs.

language mandating his confinement at Miramar for the duration of his confinement. The military regulations exhibited by both parties demonstrate that the CA is responsible for designating the initial place of confinement. Petitioner neither describes nor provides evidence suggesting that the language in the court-martial orders must be read as more than the CA having exercised his responsibility to designate the initial place of confinement.[9] Military "sentences of imprisonment . . . may be carried into execution in any prison or penitentiary under the control of the United States." Kuykendall v. Taylor, 285 F.2d 480, 481 (10th Cir. 1960); 10 U.S.C. § 858(a);[10] see also Roberts v. U.S. Dept. of the Navy, 961 F.2d 220 (Table), 1992 WL 75205, at *3 (10th Cir. 1992) (Tenth Circuit has concluded that "naval authorities have broad power to change the original designated place of confinement of a Navy prisoner"); 18 U.S.C. § 4083 ("Persons convicted of offenses. . . by courts martial punishable by imprisonment for more than one year may be confined in any United States penitentiary."). Thus, like other federal inmates, a military prisoner has no federal or constitutional right to confinement in a particular facility. Navy officials, like other federal prison officials, are presumed to have the expertise along with the discretion to classify inmates to different security levels and to assign them to appropriate institutions and programs.

---

[9]    Respondent cites R.C.M. Rules 1107(f)(40)(c) & 1113(e)(2)(c), Secretary of the Navy Instruction 1640.9C § 7104 and Navy JAG Instruction 5800.7E §§ 157b & 169 as providing that the convening authority has the authority and responsibility to designate the initial place of confinement.

[10]    Section 858(a) (Execution of Confinement) pertinently provides:

> . . . a sentence of confinement adjudged by a court-martial or other military tribunal . . . may be carried into execution by confinement in any place of confinement under the control of any of the armed forces or in any penal or correctional institution under the control of the United States, or which the United States may be allowed to use . . . ."

Id.

Finally, Mr. Maze does not allege facts establishing that he had a liberty interest in remaining at Miramar.  Military regulations discussed herein cannot be read to have created such an interest.  It follows that petitioner fails to present a factual or legal basis for his assertion of a denial of due process.  In sum, Mr. Maze does not show that he is entitled by the U.S. Constitution or federal law to confinement at Miramar.

Petitioner's claim that his confinement will be lengthened by 432 days[11] due to his transfer to the USDB is a challenge to the duration of his confinement, which is clearly cognizable under Section 2241.  This claim is not supported by adequate facts however, and is speculative.  While petitioner presents some information regarding programs at Miramar, he does not provide adequate information regarding programs and abatements at either Miramar or the USDB.  In response to the traverse, respondent reveals that Mr. Maze attended and completed crime-specific treatment at the USDB after his first year of confinement.  Respondent cites DoDI 1325.7 § E26.5, which provides that a prisoner may be awarded up to three ET abatement days a month during the first year of confinement and up to five days a month after the first year.  Respondent reasons that petitioner's completion of the rehabilitation program at the USDB after his first year of confinement actually increased the number of ET abatement days he could earn toward his 12-year sentence by two days a month as compared to if he had attended the program in his first year at either Miramar or the USDB.  Response To Traverse (Doc. #20) at 6.  Respondent argues from these facts that petitioner suffered no prejudicial delay of programs.  Mr. Maze has provided no facts regarding his alleged efforts to earn particular abatements at the USDB.  Military regulations exhibited by both parties

---

[11]    In support of this claim, petitioner alleges that Miramar provides up to three days per month abatement for self-help, treatment and college programs, and that he has been denied equivalent abatements at the USDB.  He then multiplies three days by 144 months (12 years) and calculates that his confinement will be lengthened by 432 days.

show that a variety of types of abatements are available at both institutions.  For example, good conduct time, which is considered an abatement of sentence of confinement, is accorded to every military prisoner serving a non-life sentence of confinement.  See id. (citing DoDI 1325.7 Section E26.1.1 (2001).  Mr. Maze alleges no facts showing that abatements offered at the USDB are constitutionally inadequate.  Nor does he explain how his release date is actually being calculated in a manner that violates federal statutory or constitutional law.  Significantly, Mr. Maze does not suggest that his confinement has actually been extended beyond his adjudged sentence of 12 years, and his claim is not that earned good time was forfeited.  Importantly, Mr. Maze does not allege facts establishing that he had a liberty interest in remaining at Miramar.  Military regulations discussed herein obviously did not create such an interest.[12]  Petitioner therefore fails to present a factual or legal foundation for his assertion of a denial of due process.  In sum, Mr. Maze alleges no facts or controlling authority indicating that he is entitled by the U.S. Constitution or federal law to confinement at Miramar.

Petitioner bases his lengthened confinement claim in part upon his belief or speculation that he will not be granted parole as early at the USDB as he might at Miramar.  Release from confinement prior to expiration of a military inmate's full sentence may be possible by way of parole, Mandatory Supervised Release (MSR), and application of good conduct time.  Huschak v. Gray, 642 F. Supp.2d 1268, 1273 (D. Kan. 2009).  Petitioner, however, has no liberty interest in release on parole in the military system.  Early conditional release of a military prisoner is

---

[12]        Petitioner also claims a violation of Department of Defense Directive (DODI) 1325.7, which directs each military service to ensure comparable "earn time" programs among military facilities.  The violation of a military regulation alone does not amount to grounds for federal habeas corpus relief.  Moreover, petitioner does not allege sufficient facts to show that his transfer violated a military regulation.

discretionary.[13]  Id.

Petitioner's challenges to the execution of his sentence are also deficient for the reason that he fails to show that he exhausted administrative remedies on these claims.  Full and proper exhaustion of all available administrative remedies is a prerequisite to relief under § 2241.  Banks, 431 F. App'x at 757 (citing Gsik v. Schilder, 340 U.S. 128, 130-31 (1950), McMahan v. Hunter, 179 F.2d 661, 662 (10th Cir. 1950)).  A habeas corpus petitioner bears the burden of demonstrating that he exhausted prior to filing a lawsuit in federal district court.  Mr. Maze alleges no facts showing that he presented these particular claims by way of administrative remedies available within the military, or at the USDB in particular, prior to filing his petition.

Several of petitioner's complaints regarding access to and differences in rehabilitation programs at the USDB appear to be in the nature of challenges to the conditions of his confinement, which are not cognizable in a habeas corpus petition.  See Banks, 431 F. App'x at 757.  For example, petitioner's allegation that he desires the best sex offender treatment available is clearly a conditions claim.  The appropriate vehicle for such claims is a separate lawsuit initiated by the filing of a civil rights complaint.[14]  To the extent that petitioner is attempting to litigate conditions claims in this habeas action, these claims must be dismissed without prejudice.  See id. (citing Rael v. Williams, 223 F.3d 1153, 1154-55 (10th Cir. 2000)).

For all the foregoing reasons, the court dismisses this action for failure to state a claim for federal habeas corpus relief.

---

[13]     Respondent points out that the first reason provided for denial of petitioner's parole application was that release that early in his sentence would have been premature.

[14]     The filing fee for a civil rights complaint is $400.00, or for one granted leave to proceed in forma pauperis it is $350.00.

**Pending Motion**

Petitioner has filed a motion to expedite the court's decision on his habeas corpus petition. See Motion To Expedite (Doc. #22).  This motion is sustained, and the court enters its decision herein.

**IT IS THEREFORE ORDERED** that this action is dismissed and all relief is denied, without prejudice, for failure to state a claim for federal habeas corpus relief.

**IT IS FURTHER ORDERED** that petitioner's Motion To Expedite (Doc. #22) is granted.

Dated this 1st day of September, 2015 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge